UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

ROBERT TAMBURRI, individually and on       Civ. No.
behalf of all members of the class similarly
situated,
                     Plaintiff,

       -against-                  **VERIFIED CLASS ACTION COMPLAINT**

GENERAC POWER SYSTEMS INC.,       Jury Trial Demanded

           Defendant.
_____x

Plaintiff ROBERT TAMBURRI, by and through his undersigned counsel, brings this

action individually and on behalf of all others similarly situated ("the Class") against the above-

named Defendant, and alleges as follows:

## NATURE OF ACTION

1.     This is a case against Defendant Generac Power Systems Inc. ("Generac" or

"Defendant") for breach of contract and breach of warranty following the installation of a 16KW

Guardian Series automatic standby whole house generator on Plaintiff's property in September,

2019. Following the installation by a Generac Independent Authorized Service Dealer, the

generator did not function properly despite successive attempts by Plaintiff to resolve the issue

through communications with Generac and its authorized dealers. Plaintiff further discovered

that the generator was installed with incorrect wiring, which, upon information and belief,

presented an ongoing safety risk.

## THE PARTIES

2.     Plaintiff Robert Tamburri is a resident of Sullivan County, New York.

3.      Upon information and belief, Defendant Generac, which distributes, markets, and directs the marketing of its products throughout the United States, is a publicly traded Wisconsin corporation with its principal place of business located at S45 W29290 Highway 59, Waukesha, Wisconsin 53189.

## JURISDICTION and VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over the claims in this lawsuit since it involves numerous questions of federal law.

5.      This Court has personal jurisdiction over Defendant because it conducts a substantial amount of business within this District.

6.      This Court has supplemental jurisdiction to hear and decide relevant causes of action arising under the laws of the State of New York.

7.      Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), as many of Defendant's actions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

8.      Plaintiff bought and had installed a Generac 16KW Guardian Series automatic standby whole house generator in November 2019 for his country vacation home located in Sullivan County. The generator was installed by Generac authorized dealer American Electric, LLC ("American Electric") for a total cost of $8,400. However, within a few months the generator failed to work.

9.      Plaintiff then called American Electric and a technician was sent. The technician advised that due to the adverse weather conditions, it was appropriate to construct a "snow wall"

to keep the air intake clear, and that this should resolve the issue. Plaintiff subsequently made a "snow wall" but the generator still did not work.

10.     Plaintiff called Generac since the generator was still under full warranty. After getting through to a Generac representative on the phone, the representative chuckled and said that the Generac warranty was complicated and that it would depend on what part of the generator was at issue. Plaintiff was then put on hold, but no Generac representative ever got back to him.

11.     Plaintiff contacted another Generac authorized dealer, who suggested that the exhaust hose be moved further away from the generator, as the fumes could be entering the unit and stalling it out. Plaintiff had the exhaust hose moved about three feet away from the unit, but the generator still failed to work. This service appointment cost Plaintiff another $150; however, the generator continued to fail to function.

12.     Following successive attempts by Generac authorized dealers to resolve the issues Plaintiff was facing, the generator continued to display a number of fault warnings. These included a status on November 11, 2020 of "needs maintenance," a status on December 19, 2020 of "fault E1902," and statuses on March 24, 2022 of "stopped due to alarm," "overspeed," and "charger missing ac."

13.     Moreover, Plaintiff was informed by one of the Generac authorized detailers that his generator contained incorrect and faulty wiring. This was in relation to an 18awg wire installed in the generator, concerning the 23 Transfer Control Signal. Upon information and belief, this is a form of "speaker wire," which is not appropriate for the use in question. Rather, the wiring should be "stock cable." Upon information and belief, and according to a generator technician that provided advice to Plaintiff on August 10, 2024, the wiring used should be

capable of handling 120 VAC. The "speaker wire" does not meet this requirement and therefore, upon information and belief, presented (and still presents) a serious and ongoing safety issue.

14.     After further correspondence with Generac, Generac informed Plaintiff that it would authorize a "case review" from another authorized dealer.

15.     In 2024, Plaintiff had a fourth Generac authorized dealer, Ross Electric and Generators LLC, perform maintenance on the generator for a total cost of $899.19. Ross Electric found that the "mixer" had to be replaced. Following this maintenance, the generator finally began functioning correctly. However, the faulty wiring was never addressed, and upon information and belief, continues to be a safety hazard.

16.     Generac's written warranty provides coverage for "parts only" for a period of three years and "major parts component only" for a period of five years. Generac warrants that its generators and/or transfer switch systems will be free from defects in material and workmanship for the prescribed periods, and that Generac will, at its discretion, "repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective." Plaintiff further complied with the terms of the warranty when he had the generator evaluated by an Independent Authorized Service Dealer following the discovery of the defects.

17.     Despite Plaintiff engaging in extensive email correspondence with Generac support, Generac has failed to cover any of the costs and expenses incurred by Plaintiff; nor has Generac addressed the faulty and incorrect wiring that remains in the generator.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action under Federal Rules of Civil

Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and on behalf of all others similarly

situated, defined as follows (the "Class," "Class Members," or "The Nationwide Class"):  The

Nationwide Class: All individuals who purchased from Generac or any Generac Independent

Authorized Service Dealer a 16KW Guardian Series automatic standby whole house generator.

Excluded from the Class are Defendant and any entity in which they have a controlling interest

and their legal representatives, officers, directors, assignees, successors, and their officers,

directors, management, employees, subsidiaries, and affiliates. Plaintiff reserves the right to

revise the definition of the Class, and reserve the right to establish sub-classes where appropriate.

19.      Members of the Class are so numerous and widely geographically dispersed

throughout the United States and its territories that joinder is impracticable. Plaintiff believes that

there are thousands of members of the Class, in an amount to be determined in discovery and at

trial. Further, the identities of Class members will be readily ascertainable through business

records kept in regular order.

20.     Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and

all members of the Class were damaged by the same wrongful conduct by Defendant.

21.     Plaintiff will fairly and adequately protect and represent the interests of the Class.

22.     Plaintiff's interests are coincident with, and not antagonistic to, the Class.

23.     Plaintiff is represented by counsel who are experienced and competent in the

prosecution of class action litigation.

24.     Questions of law and fact common to the Class include, but are not limited to: (a)

whether the 16KW Guardian Series automatic standby whole house generators ("the generators")

in question are defective; (b) whether the generators are defectively designed and/or manufactured; (c) whether Generac knew or reasonably should have known about the incorrect wiring prior to distributing the generators to Plaintiff and putative Class Members; (d) whether Generac concealed from and/or failed to disclose to Plaintiff and putative Class Members the incorrect wiring in the generators; (e) whether Generac knew or reasonably should have known about the incorrect wiring after distributing the generators to Plaintiff and putative Class Members; (f) whether Generac breached the implied warranty of merchantability; (g) whether Generac breached express warranties relating to the generators; (h) whether Generac's warranty is unconscionable; (i) whether Generac should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective generators; (j) whether Plaintiff and putative Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; (k) whether Plaintiff and putative Class Members either paid a premium for the generators that they would not have paid but for Generac's false representations or would not have purchased them at all; (l) whether Plaintiff and putative Class Members are entitled to injunctive, declaratory, or other equitable relief; and (m) whether Generac engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective generators.

25.     Questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual members of the Class, because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.

26.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy. Among other things, class treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

27.     The Class may also be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making it appropriate to award declaratory and injunctive relief with respect to the Class.

28.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## COUNT I
### VIOLATION OF MAGNUSON MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301, ET SEQ.
### (On Behalf of Plaintiff and the Nationwide Class)

29.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

30.     The generators in question are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

31.     Generac is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5). Plaintiff and the other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased the generators for personal, family, or household purposes.

32.     The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

33.     Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

34.     The terms of written warranties and implied warranty were part of the basis of the bargain between Plaintiff and all other Class Members when purchasing the generators.

35.     Generac breached these written and implied warranties as described in detail above.

36.     The generators share common design defects, including improper wiring that upon information and belief, presents an ongoing safety hazard to Plaintiff and Class Members. Plaintiff and each of the Nationwide Class Members have had sufficient direct dealings with either Generac or its agents (including Generac authorized dealers) to establish privity of contract between Generac, on the one hand, and Plaintiff and each of the other Nationwide Class Members, on the other hand. Alternatively, and without prejudice to the foregoing, privity is not required because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Generac and its authorized dealers, and specifically, of Generac's implied warranties. The authorized dealers were not the intended ultimate consumers of the generators, have no rights under the warranty agreements provided with the generators and such warranty agreements were designed for and intended to benefit the Plaintiff and Nationwide Class Members only.

37.     Generac has refused to compensate Plaintiff's and Class Members' damages arising from the defects.

38.     As a direct and proximate result of Generac's breach of the written warranties and

the implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**UNDER THE UNIFORM COMMERCIAL CODE § 2-314**
**(On Behalf of Plaintiff and the Nationwide Class)**

39.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

40.     Plaintiff asserts claims for breach of implied warranty of merchantability under U.C.C. § 2-314, which has been adopted by and is materially the same under the laws of New York.

41.     Generac is and was at all relevant times a merchant as defined by U.C.C. § 2-104 298. The generators are and were at all relevant times goods as defined by U.C.C. § 2-105.

42.     The U.C.C. states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

43.     The U.C.C. states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2)(f).

44.     Plaintiff and members of the Nationwide Class purchased the generators manufactured and marketed by Generac by and through Generac's authorized dealers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized dealers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the merchant, manufacturer, marketer, warrantor, and/or seller of the generators.

45.     The implied warranty of merchantability included with the sale of each generator means that Generac warranted that the generator would be fit for the ordinary purposes for which the generator was used and sold, and was not otherwise injurious to consumers, that the generator would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Generac. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Generac, Plaintiff, and the Nationwide Class Members.

46.     Generac impliedly warranted that the generators were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the generators manufactured, supplied, distributed, and/or sold by Generac were safe to use; and (ii) a warranty that the generators would be fit for their intended use while they were being used by consumers.

47.     Contrary to the applicable implied warranties, the generators, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with safe and reliable backup power solutions. Instead, the generators suffered, and continue to suffer, from a design and/or manufacturing defect, as alleged herein.

48.     Generac breached the implied warranty of merchantability because the generators are not fit for their ordinary purpose of providing safe and reliable backup power solutions because, inter alia, the generators contain the incorrect wiring, which ceases or decreases performance of the generators. Therefore, the generators are not fit for their particular purpose of safely and reliably generating power.

49.    The problems associated with the incorrect wiring are safety risks such that the generators do not provide safe and reliable power generation, and therefore, there is a breach of the implied warranty of merchantability.

50.    Generac's warranty expressly applies to the original purchaser and any succeeding owner of the generator on the original purchasing site, creating privity between Generac on the one hand, and Plaintiff and Class Members on the other.

51.    Nonetheless, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Generac's warranties and its sales through retailers. Generac's retailers were not intended to be the ultimate consumers of the generators and have no rights under the warranty agreements. Generac's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries.

52.    More specifically, Generac's intention that its warranties apply to Plaintiff and Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including the Limited Warranty. Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the generators (as they are systems intended, marketed, and sold for residential – and not retail – use) and warranties.

53.    Generac's failure to adequately repair or replace the defective generators caused the warranty to fail in its essential purpose.

54.    Generac breached the implied warranties because the generators were sold with a design and/or manufacturing defect, which substantially reduced or ceased the expected performance of the generators and made them unsafe during ordinary, intended, residential use.

55.    As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in

addition to costs, interest and fees, including attorneys' fees, as allowed by law.


## COUNT III
### BREACH OF EXPRESS WARRANTY
### UNDER THE UNIFORM COMMERCIAL CODE § 2-313
### (On Behalf of Plaintiff and the Nationwide Class)

56.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

57.     Plaintiff and Class Members assert claims for breach of express warranties by affirmation, promise, description, or sample under U.C.C. § 2-313, which has been adopted by and is materially the same under the laws of New York.

58.     Generac is and was at all relevant times a "merchant" as defined by U.C.C. § 2-104. The generators are and were at all relevant times "goods" as defined by U.C.C. § 2-105. 217. U.C.C. § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

59.     Plaintiff and members of the Nationwide Class purchased the generators manufactured and marketed by Generac by and through Generac's authorized dealers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the merchant, manufacturer, marketer, warrantor, and/or seller of the generators.

60. In connection with its sale of the generators, Generac, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that the generators were safe and reliable at generating power.

61. The uniform express written warranties covering the generators were a material part of the bargain between Generac and consumers. At the time it made these express warranties, Generac knew reasonable consumers, including the named Plaintiff and Class Members, were purchasing the generators because they believed the generators to be as represented and marketed.

62. Each of the generators has an identical or substantially identical product representation(s) as Generac represents that all its generators safely and reliably generate power.

63. Generac breached its express warranties by selling generators that were, in actuality, not safe and reliable at generating power as promised in the labeling and marketing. Generac breached the warranty because it sold the generators with the aforesaid design and/or manufacturing defects, which was known to Generac and unknown to consumers at the time of sale. The defects of the generators that Plaintiff and putative Class Members purchased makes them unable to safely and reliably generate power and causes loss of the generator, loss of use of the generator, and loss of the benefit of their bargain.

64. Generac further breached its express warranties because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair the defects or replace the generators with units that are actually as represented.

65. Generac breached its express warranty to adequately repair the defects or replace the generators despite its knowledge of the defects, and/or despite its knowledge of alternative formulations, designs, materials, and/or options for manufacturing the generators.

66.    Generac further breached its express written warranties to Plaintiff and Class Members in that the generators contain the defect at the time they leave the manufacturing plant, and on the first day of purchase, and by failing to disclose and actively concealing this risk from consumers.

67.    Plaintiff and Class Members relied upon the express warranty provided by Generac in purchasing the generators.

68.    Generac's warranty expressly applies to the original purchaser and any succeeding owner of the generator at the original site of the generator for generators purchased within the United States, creating privity between Generac on the one hand, and Plaintiff and Class Members on the other.

69.    Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the generator and warranties, creating privity or an exception to any privity requirement. Plaintiff and Class Members are the intended beneficiaries of Generac's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the generators and have no rights under the warranty agreements provided by Generac. Generac warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the generator as the generators are intended, marketed, and sold for residential – and not retail – use.

70.    Generac has been provided sufficient notice of its breaches of the express warranties associated with the generators.

71.    As a direct and proximate result of Generac's breach of its express written warranties, Plaintiff and Class Members suffered damages and did not receive the benefit of the

bargain and are entitled to recover compensatory damages, including, but not limited to, the cost of inspection, repair, and diminution in value. Plaintiff and Class Members suffered damages at the point-of-sale stemming from their overpayment for the generators, in addition to loss of the generators and its intended benefits.

## COUNT IV
### BREACH OF CONTRACT/BREACH OF COMMON LAW WARRANTY
### (On behalf of Plaintiff and the Nationwide Class)

72.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

73.     To the extent Generac's commitment is deemed not to be a warranty under the Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

74.     Plaintiff and Class Members purchased the generators from Generac through its authorized dealers.

75.     Generac expressly warranted that the generators were fit for their intended purpose of safely and reliably generating power and providing backup power solutions.

76.     Generac made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff and putative Class Members, and Generac.

77.     Generac breached the warranties and/or contract obligations by placing the defective generators into the stream of commerce and selling them to consumers, when it knew the generators contained defects, and did not safely and reliably generate power. These deficiencies substantially and/or completely impair the use and value of the Generator.

78.     The deficiencies described existed when the generators left Generac's possession or control and were sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the generators were not discoverable by Plaintiff and Class Members at the time of purchase of the generators.

79.     As a direct and proximate cause of Generac's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the generators if they knew the truth about the defective condition of the generators by virtue of their common defect.

## COUNT V
### BREACH OF CONTRACT UNDER NEW YORK LAW
#### (On behalf of Plaintiff and the Nationwide Class)

80.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

81.     Under New York law, a plaintiff must establish the following elements in order to state a claim for breach of contract: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011).

82.     Generac's written warranty represents a contract between Plaintiff and Class Members and Defendant. The warranty provides coverage for "parts only" for a period of three years and "major parts component only" for a period of five years. Generac warrants that its generators and/or transfer switch systems will be free from defects in material and workmanship for the prescribed periods, and that Generac will, at its discretion, "repair or replace any part(s)

which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective."

83.    Generac breached the terms of its warranty when it provided a generator that did not function to Plaintiff, and that further contained incorrect wiring that represents an ongoing safety risk, and subsequently failed to repair, replace, or refund the generator despite Plaintiff fully complying with the terms of the warranty when he had the generator evaluated by an Independent Authorized Service Dealer following the discovery of the defects.

84.    As a direct result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be determined at trial.

<u>COUNT VI</u>
**BREACH OF IMPLIED WARRANTY UNDER NEW YORK LAW**
**(On behalf of Plaintiff and the Nationwide Class)**

85.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

86.    "To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420–21 (S.D.N.Y. 2011) (internal citations omitted).

87.    Generac breached the implied warranty of merchantability when it provided a generator that did not function to Plaintiff, and that further contained incorrect wiring that represents an ongoing safety risk, and subsequently failed to repair, replace, or refund the

generator despite Plaintiff having the generator evaluated by an Independent Authorized Service Dealer following the discovery of the defects at Defendant's request

88.    As a direct result of Defendant's breach of of implied warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## JURY DEMAND

89.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, on behalf of himself and the proposed Class, demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the proposed Class, seeks judgment against Defendant and that this Court:

a.  Determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3),

b.  Direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class members, and appoint Plaintiff as the named representative of the Class and Plaintiff's counsel as Class Counsel;

c.  Award Plaintiff and the Class members compensatory, statutory, treble, and punitive damages on COUNTS I through VI in an amount to be determined at trial, plus interest in accordance with law;

d.  Award Plaintiff and the Class members their costs of suit, including reasonable attorneys' fees as provided by law;

e.  Award appropriate equitable and injunctive relief; and

f.  Award such other and further relief as the Court deems just and proper.

Dated: New York, New York
     May 5, 2025

McCALLION & ASSOCIATES LLP
*/s/ Kenneth F. McCallion*
Kenneth McCallion
Darragh O'Boyle
*Attorneys for Plaintiffs*
100 Park Avenue – 16th Floor
New York, NY 10017
646-366-0884
kfm@mccallionlaw.com

## VERIFICATION

ROBERT TAMBURRI, declares the following under penalty of perjury:

1.      I am the Plaintiff in the above Complaint and am fully knowledgeable as to the facts and circumstances of this matter.

2.      I have read the foregoing Verified Complaint and know the contents to be true of my own knowledge, except to matters on information and belief and, as to those matters, I believe them to be true.

ROBERT TAMBURRI

NOTARY PUBLIC

Sworn before me this
5th day of May 2025

Kenneth F. McCallion, Notary Public
State of New York
No. 02MC4951204
Qualified in New York County
Commission Expires 07/16/2025