UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT TAMBURRI, *individually and on behalf of all members of the class similarly situated*,

*Plaintiff*,

v.

GENERAC POWER SYSTEMS INC.,

*Defendant*.

No. 25-CV-3752 (KMK)

OPINION & ORDER

Appearances:

Kenneth Foard McCallion, Esq.
McCallion & Associates LLP
New York, NY
*Counsel for Plaintiff*

Cassidy Sturdivant, Esq.
Wes H. Gilchrist, Esq.
Lightfoot Franklin White
Birmingham, AL
*Counsel for Defendant*

Marsha Jessica Indych, Esq.
Faegre Drinker Biddle & Reath LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Robert Tamburri ("Plaintiff"), individually and on behalf of a class of similarly situated individuals, brings this Action against Generac Power Systems Inc. ("Defendant"), seeking damages of various kinds, costs, attorneys' fees, and equitable relief, (Am. Compl. 1, 18–19 (Dkt. No. 19)), stemming from certain asserted defects in a generator sold by Defendants and installed in Plaintiff's vacation home, (*id.* at ¶¶ 1, 8–13). Before the Court is Defendant's

Motion to Dismiss (the "Motion"). (Mot. to Dismiss (Dkt. No. 26).) For the reasons that follow, Defendant's Motion is granted.

## I. Background

### A. Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken," is proper without "convert[ing] the motion to dismiss into one for summary judgment." *Id.* (quoting *Thomas*, 232 F. Supp. 2d at 275); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)).

The Court may also consider "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or

falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted). And, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document . . . [or] regarding [its] relevance . . . . This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citation and internal quotation marks omitted); *see also In the Matter of the Application of Hampshire Recreation, LLC v. Village of Mamaroneck*, No. 14-CV-7228, 2016 WL 1181727, at *5 (S.D.N.Y. Mar. 25, 2016) (describing categories of materials that may be considered on a motion to dismiss), *aff'd sub nom. Hampshire Recreation, LLC v. Village of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016).

Defendant requests that the Court take judicial notice of the warranty that applies to the generator in this Action. (Mot. 2 n.2.) The Court determines that this document "is undoubtedly incorporated by reference in Plaintiff's [Amended] Complaint." *76 Route 6 Holdings Inc. v. Town of Yorktown*, No. 25-CV-693, 2026 WL 867180, at *3 (S.D.N.Y. Mar. 30, 2026). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *Hampshire Recreation*, 2016 WL 1181727, at *5 (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)). In his Amended Complaint, Plaintiff alleges that there were "uniform express written warranties covering the generators" that formed "a material part of the bargain between [Defendant] and consumers." (Am. Compl. ¶ 61; *see also* Am. Compl. ¶¶ 8, 10, 16, 56–71 (alleging facts related to Defendant's express written warranty).) Because Plaintiff expressly relies upon the written warranty to frame his claims, and there is no dispute as to its accuracy nor any dispute that Plaintiff had notice of the warranty, it is

properly considered as part of a Motion to Dismiss pursuant to Rule 12(b)(6). *See Feliciano v. Gen. Motors LLC*, No. 14-CV-6374, 2016 WL 9344120, at *4 n.6 (S.D.N.Y. Mar. 31, 2016) ("The [c]ourt is permitted to consider the limited warranty submitted by [the defendant on a motion to dismiss] because [the p]laintiffs relied on the terms of warranty to bring the breach of limited warranty claim."); *Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *3 n.2 (E.D.N.Y. Sept. 30, 2015) ("Although [the] plaintiff did not attach the Warranty Guide to her complaint, the Warranty Guide is integral to [the] plaintiff's complaint and may be considered here."); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1230 (S.D. Fla. 2014) (substantially same); *World Wide Tours of Greater NY, Ltd. v. Parker Hannifin Customer Support, Inc.*, No. 07-CV-1007, 2008 WL 516676, at *1, *2 n.1 (E.D.N.Y. Feb. 25, 2008) (considering "purchase contract and warranty" where the plaintiffs "relied on the [documents] in their complaint").

B. Factual Background

Plaintiff has a "country vacation home" in Sullivan County, New York. (Am. Compl. ¶ 8.) In November 2019, he bought and installed a "Generac 16KW Guardian Series automatic standby whole house generator" (the "Generator") for the property which, he understood, had a "five-year warranty." (*Id.*) A dealer authorized by Generac, American Electric, LLC ("American Electric") installed the Generator. (*Id.*) Plaintiff later learned that American Electric "did not file a permit with the town" or even "have a licensed electrician certify their work, although Plaintiff paid" for them to do so. (*Id.*)

Within a few months of installation, the Generator ceased to work. (*Id.*) Plaintiff called American Electric, which sent a technician. (*Id.* ¶ 9.) The technician appears to have attributed the failure to "adverse weather conditions," and advised Plaintiff that a "snow wall" needed to be

built to keep the device's air intake clear.[1] (*Id.*) At some unspecified time, Plaintiff built a snow wall, but the Generator remained useless. (*Id.*)

Plaintiff called Generac, on the understanding that the Generator was under full warranty. (*Id.* ¶ 10.) The representative he spoke with "said that the Generac warranty was complicated and that it would depend on what part of the [G]enerator was at issue," placed Plaintiff on hold, and never got back to him. (*Id.*)

Next, Plaintiff contacted another Generac authorized dealer. (*Id.* ¶ 11.) The dealer suggested that the device's exhaust hose be moved further away from the Generator, on the understanding that "fumes could be entering the unit and stalling it out." (*Id.*) He paid to move the hose, but the device continued to be useless. (*Id.*) Despite Plaintiff's best efforts, the Generator "continued to display a number of fault warnings." (*Id.* ¶ 12.) These ranged from a "needs maintenance" status on November 11, 2020, to a "fault E1902," status on December 19, 2020, and statuses of "stopped due to alarm," "overspeed," and "charger missing ac," on March 24, 2022. (*Id.*)[2]

---

[1] Plaintiff does not explain what a "snow wall" is, though it appears standard practice to keep snow cleared from the vicinity of a generator to avoid safety issues. *See* Barnstable County, *Generator and Home Heating Safety After the Cape Code Winter Storm* (Feb. 24, 2026), https://www.capecod.gov/2026/02/24/generator-heating-safety-cape-cod/ [https://perma.cc/Z2XN-KVUA] (recommending keeping generator clear of snow to prevent both shutdown and carbon monoxide buildup); *Suazo v. Ocean Network Express (N. Am.), Inc.*, No. 20-CV-2016, 2023 WL 2330428, at *6 (S.D.N.Y. Mar. 2, 2023) (noting permissibility of taking judicial notice of materials on official government websites). While Sullivan County is no Hoth, *see The Empire Strikes Back* (20th Century Fox 1980), the Court assumes that Plaintiff was being advised to construct a permanent wall that would prevent the exhaust area from clogging and the generator shutting down in the event of snow.

[2] It is unclear whether these messages led Plaintiff to contact Generac itself or Generac authorized servicers for additional work, or whether he took any additional remedial efforts specific to these warnings.

In November 2023, Sullivan Heating and Cooling LLC—also a Generac authorized dealer—told Plaintiff that his "generator contained incorrect, faulty[,] and illegal wiring," because an 18awg wire was installed in the Generator, somehow connected to the Generator's "23 Transfer Control Signal."[3] (Am. Compl. ¶ 13.) Plaintiff alleges, on information and belief, that the 18awg wire is "a form of 'speaker wire,'" not appropriate for the use in the Generator, which should have contained "stock cable" that (unlike the "speaker wire") could bear 240 volts. (*Id.*)

At an unspecified time, apparently after this conversation, "Generac informed Plaintiff that it would authorize a 'case review' from another authorized dealer." (*Id.* ¶ 14.) In 2024, another authorized dealer, Ross Electric and Generators LLC ("Ross"), performed maintenance on the Generator. (*Id.* ¶ 15.) (It is unclear from the Amended Complaint whether Ross was the dealer carrying out the "case review" or whether Plaintiff was responsible for bringing Ross in.) Ross found that the device's "mixer" was faulty and needed to be replaced; Ross also confirmed that the wiring was "incorrect and illegal" due to it being too low voltage. (*Id.*) Ross informed Plaintiff that this wiring issue poses a risk of fire to Plaintiff, his vacation home, and his family. (*Id.*) After the visit from Ross, "the [G]enerator finally began functioning," but nevertheless continues to contain the "speaker wire." (*Id.* ¶¶ 13, 15.) Plaintiff claims that this wiring prevents

---

[3] Plaintiff describes Sullivan Heating and Cooling LLC as an "authorized detailer[]" but this appears to be a typo as all other references in the Amended Complaint are to authorized "dealers." (Am. Compl. ¶ 13; *see generally* Am. Compl.) Plaintiff also says that the wire was "concerning the 23 Transfer Control Signal"; while the Court is unsure how a wire can "concern" a Control Signal, the Court assumes at the Motion to Dismiss stage that it was connected, either directly or indirectly, to a critical signal in the device. *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 273 n.1 (S.D.N.Y. 2023) (describing that the Court should "draw all reasonable inferences in the plaintiff's favor" on a Motion to Dismiss pursuant to Rule 12(b)(6)).

him from selling his vacation home as it "is likely to make Plaintiff's [vacation] home fail inspection." (*Id.* ¶ 15.)

Based on the text of the warranty, Generac agrees that "upon the successful start-up and/or on-line activation of the unit," the "Generator and/or transfer switch system will be free from defects in material and workmanship for the items and period set forth" in the document. (Mot., Ex. A, at 2 (Dkt. No. 26-1).) "Generac will, at its discretion, repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective." (*Id.*) Any allegedly defective equipment "must be evaluated by the nearest Independent Authorized Service Dealer." (*Id.*) The Warranty establishes that its coverage is "for Five (5) years or two-thousand (2,000) hours, whichever occurs first." (*Id.*) For one to two years, the warranty covers "Parts, Labor[,] and Limited Travel"; for three years it covers "Parts Only"; and for four to five years it covers "Major Parts Component Only [*sic* .]" (*Id.* (footnote call omitted).) The document explains that "Major Component coverage is on engine (short block) and alternator (rotor and stator) parts only in years four and five." (*Id.* (emphasis and footnote call omitted).) The document also provides the following limited warranty:

> THIS WARRANTY SUPERSEDES ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED. SPECIFICALLY, GENERAC MAKES NO OTHER WARRANTIES AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. ANY IMPLIED WARRANTIES WHICH ARE ALLOWED BY LAW, SHALL BE LIMITED IN DURATION TO THE TERMS OF THE EXPRESS WARRANTY PROVIDED HEREIN. SOME JURISDICTIONS DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. GENERAC'S ONLY LIABILITY SHALL BE THE REPAIR OR REPLACEMENT OF PART(S) AS STATED ABOVE. IN NO EVENT SHALL GENERAC BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, EVEN IF SUCH DAMAGES ARE A DIRECT RESULT OF GENERAC'S NEGLIGENCE. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR

> CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY HAVE OTHER RIGHTS FROM UNDER APPLICABLE LAW.

(*Id.*) Finally, Plaintiff says that he complied with the terms of the warranty when he had the Generator evaluated by an Independent Authorized Service Dealer following the discovery of the defects. (Am. Compl. ¶ 16.)

C. Procedural Background

On May 6, 2025, Plaintiff filed the instant Action. (*See* Compl. (Dkt. No. 1).) On July 11, 2025, in response to a letter from Defendant purporting to alert Plaintiff to certain deficiencies in the Complaint, (*see* Letter from Wesley B. Gilchrist, Esq. to Court (June 16, 2025) (Dkt. No. 16)), Plaintiff filed his First Amended Complaint, (*see* Am. Compl.). The Amended Complaint alleges violations of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; breach of implied warranty under the Uniform Commercial Code § 2-314; breach of express warranty under the Uniform Commercial Code § 2-313; breach of contract or common law warranty; and breach of implied warranty. (*See* Am. Compl. ¶¶ 29–88.)

On September 10, 2025, the Court set a briefing schedule on Defendant's anticipated Motion to Dismiss. (*See* Dkt. (minute entry dated Sept. 10, 2025).) On October 17, 2025, Defendant filed the instant Motion and supporting papers. (*See* Mot.) On November 17, 2025, Plaintiff filed his Memorandum of Law in Opposition. (*See* Mem. of L. in Opp'n to Mot to Dismiss ("Pl.'s Opp'n") (Dkt. No. 27).) On December 3, 2025, Defendant filed its Reply Memorandum. (*See* Reply to Response re: Mot. to Dismiss ("Reply") (Dkt. No. 28).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime

of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

B. Analysis

Neither Party has challenged this Court's subject matter jurisdiction over the Amended Complaint. (*See generally* Mot.; Pl.'s Opp'n.) Nevertheless, "a court is required to keep a close eye to the question of its own jurisdiction, and, when determining whether it lacks 'subject-matter jurisdiction, the court is obligated to consider sua sponte issues that the parties have disclaimed or have not presented.'" *Leifer v. Good Samaritan Hosp.*, No. 24-CV-7672, 2026 WL 1948404, at *11 (S.D.N.Y. July 2, 2026) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)) (alterations adopted). "If, at *any* point, a federal court determines it lacks subject matter jurisdiction, 'the court must dismiss the action,' . . . ." *Id.* (quoting Fed. R. Civ. P. 12(h)(3))

(emphasis in original); *see also United States v. Escobar*, 761 F. Supp. 3d 493, 494 (E.D.N.Y. 2024) ("[A]ll federal courts have the duty to address their subject matter jurisdiction sua sponte 'irrespective of whether either party raises the issue.'" (emphasis omitted) (quoting *United States v. Frias*, 521 F.3d 229, 232 (2d Cir. 2008))). For the reasons that follow, the Court determines it lacks subject matter jurisdiction over the claims as alleged in the Amended Complaint.

1. Magnuson-Moss Warranty Act

The sole basis for federal jurisdiction asserted by Plaintiff in this Action is federal question jurisdiction, by way of the sole federal claim asserted in the Amended Complaint, which is one brought under the Magnuson-Moss Warranty Act, or "MMWA." (*See* Am. Compl. ¶¶ 29–38.) "The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)) (alterations in original); *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (same).

The MMWA has unique jurisdictional requirements. The relevant portion of the statutory text provides that, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[]" in either "any court of competent jurisdiction in any State or the District of Columbia," or in the alternative, "in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1). Paragraph (3) of the pertinent subsection establishes that:

> (3)No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). "The MMWA provides for federal jurisdiction . . . only where [these] specified requirements are satisfied." *McLean v. Lendbuzz Funding LLC*, No. 25-CV-2679, 2026 WL 265668, at *9 (S.D.N.Y. Feb. 2, 2026).

As to the first requirement, "the amount in controversy of any individual claim must be at least $25." *Favata v. JD Motors of Cny, Ltd.*, No. 23-CV-1549, 2025 WL 1649045, at *10 (N.D.N.Y. June 11, 2025) (wholly quoting *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 169 (E.D.N.Y. 2016)). As to the second requirement, "MMWA claims may be brought in federal court only 'if the amount in controversy [meets or exceeds] the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit.'" *McLean*, 2026 WL 265668, at *9 (quoting 15 U.S.C. § 2310(d)(3)(B)). This amount cannot include "pendent state law claims," but must encompass "only [the] warranty claims" themselves. *Id.*; *see also Cosgrove v. Oregon Chai, Inc*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("At its core . . . the MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." (quotation marks omitted)); *Cotterell v. Gen. Motors LLC*, No. 19-CV-822, 2019 WL 6894256, at *8 (D. Conn. Dec. 18, 2019) (concluding that the amount in controversy for the MMWA must be satisfied on the basis of claims brought pursuant to the MMWA, *i.e.*, only breach of warranty claims, and pendent state law claims cannot be sued to satisfy the jurisdictional amount). Finally, as to the third requirement, "if the case is brought as a class action, there must be at least 100 named

plaintiffs." *In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 735 F. Supp. 3d 1036, 1040 (E.D. Wis. 2024). This statute, understandably, has been described as an "unusual jurisdictional clause." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998).

To determine whether Plaintiff's individual claims satisfy the first two requirements, the Court must determine the damages sought. Where, as here, the plaintiff alleges the breach of a limited written warranty, "[t]he MMWA computes damages in accordance with the underlying state law." *Bey v. Mazda Motor of Am.*, No. 22-CV-3328, 2023 WL 112555, at *4 (S.D.N.Y. Jan. 5, 2023); *see also Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (affirming district court decision looking to state law to compute MMWA damages). "In New York, 'the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.'" *Bey*, 2023 WL 112555, at *4 (quoting N.Y. U.C.C. § 2-714(2)) (alteration adopted). Plaintiff "bears the burden of establishing that his damages exceed $50,000 because the value of his damages is key to this Court's jurisdiction." *Id.*

As to actual damages, Plaintiff does not allege anything about the initial price of the Generator, except that its installation cost $8,400. (Am. Compl. ¶ 8.) Assuming that the initial price was the entire $8,400, and that the alleged defects reduce its value to zero, Plaintiff's actual damages for breach of warranty would be $8,400. This amount satisfies the first jurisdictional requirement for jurisdiction over an individual claim brought pursuant to the MMWA, but not the second.

Plaintiff has also sought punitive damages. (Am. Compl. 19.) "[P]unitive damages are recoverable under the MMWA if they would be recoverable in a breach-of-warranty action

brought under governing state law." *Pyskaty*, 856 F.3d at 225 (quotation marks omitted). New York case law provides that the availability of such damages is judged by "the standard applicable to punitive damages claims arising from a breach of contract." *Id.* (citing *Eur. Am. Bank v. Superior Auto Sales, Inc.*, 698 N.Y.S.2d 630, 631 (App. Div. 1999); and then citing *Krohn v. Agway Petroleum Corp.*, 564 N.Y.S.2d 797, 799 (App. Div. 1990)). Accordingly, punitive damages are available in a New York-law governed MMWA claim if "(1) the defendant's conduct . . . [is] actionable as an independent tort; (2) the tortious conduct . . . [is] of an egregious nature; (3) the egregious conduct . . . [is] directed to the plaintiff; and (4) it . . . [is] part of a pattern directed at the public generally." *Id.* (wholly quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (N.Y. 1995)) (alterations adopted). "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." *Ramirez v. IDD Cars, LLC*, 815 F. Supp. 3d 286, 299 n.7 (S.D.N.Y. 2025) (wholly quoting *Pyskaty*, 856 F.3d at 223); *see also Maciel v. BMW of N. Am.*, No. 20-CV-458, 2021 WL 983013, at *12 (E.D.N.Y. Feb. 22, 2021) ("Generally, punitive damages claims are subjected to heightened scrutiny when they are being asserted to satisfy an amount-in-controversy requirement."), *report and recommendation adopted*, 2021 WL 980845 (E.D.N.Y. Mar. 16, 2021).

Assuming without deciding that the allegations here satisfy these requirements, *but see id.* at *12–13 (describing the threshold determination for punitive damages under the MMWA as a "high bar" that cannot be based on "speculative[] alleg[ations]"), the Court nevertheless cannot rely on the request for punitive damages to determine the amount in controversy. This is because "plaintiff[] ha[s] not provided any amounts to be considered when assessing punitive damages." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 357 n.7 (S.D.N.Y. 2019) (considering the

amount in controversy requirement under the Class Action Fairness Act). "[I]n these circumstances, 'using punitive damages to calculate the amount in controversy would require the Court to engage in unguided speculation,' which it cannot do." *Id.* (quoting *Porter v. MetroPCS Comm. Inc.*, 592 F. App'x 780, 784 (11th Cir. 2014) (summary order)) (alterations adopted).[4]

Consequential and incidental damages are also available for a breach of warranty under New York law, and may by extension be available towards the jurisdictional requirement under the MMWA. *See Ramirez*, 815 F. Supp. 3d at 299 n.7 ("New York courts have recognized the availability of incidental and consequential damages for recovery under NY UCC § 2-315 and § 2-312.") (collecting cases); *Maciel*, 2021 WL 983013, at *11 (assuming, without deciding, that incidental and consequential damages could count for the purposes of the MMWA's jurisdictional threshold). Plaintiff alleges that, after the initial installation of the Generator, he paid $150 for another service appointment and that he paid Ross $899.19 for its work on the Generator. (Am. Compl. ¶¶ 11, 15.)[5] Even adding these damages to the $8,400 identified above,

---

[4] Plaintiff obliquely references a request for treble damages in the Amended Complaint. (Am. Compl. 19.) Assuming, without deciding, that this represents the total amount of punitive damages sought (*i.e.* three times the actual damages), that such damages would be appropriate, *see Norris v. JPMorgan Chase Bank N.A.*, No. 25-CV-3231, 2026 WL 1243401, at *6 (E.D.N.Y. May 6, 2026) (describing the Supreme Court as "ha[ving] identified" a "single-digit range" ratio of actual to punitive damages as "likely to comport with due process"), and relying on the charitable assumption that the actual damages are $8,400, adding these damages to the actual damages would total a mere $33,600.

[5] Plaintiff also alleges that he built a "snow wall" and that the generator somehow "prevents Plaintiff from selling his home insofar as, upon information and belief, it is likely to make Plaintiff's home fail inspection." (Am. Compl. ¶¶ 9, 15.) However, Plaintiff has not included any allegations as to the amount of damages he has suffered—*i.e.*, how much the "snow wall" cost to construct, or what it would cost to replace the defective generator such that he would not be impeded from the sale of his home. (*See generally* Am. Compl.) *Cf. Ramirez*, 815 F. Supp. 3d at 299 n.7 ("Here, Plaintiff alleges nearly $750,000 worth of consequential and incidental damages (i.e., the cost of both replacement cars and those damages attested to by Plaintiff's damages expert). . . . [T]he Court cannot say to a legal certainty that the jurisdictional requirement under the MMWA is not met." (quotation marks omitted)).

this totals only $9,449.19.[6] Accordingly, Plaintiff's individual MMWA claim does not satisfy the second jurisdictional element. Where the maximum amount of damages ascertainable from the face of the operative complaint falls short of the MMWA's jurisdictional threshold, the Court must dismiss the MMWA claim for lack of jurisdiction. *See Lewis v. Gen. Motors LLC*, No. 25-CV-7484, 2026 WL 40899, at *5 (C.D. Cal. Jan. 5, 2026) ("[T]he [c]ourt finds that the amount in controversy falls below $50,000; the [c]ourt lacks jurisdiction over . . . the MMWA . . . claim[]."); *Bey*, 2023 WL 112555, at *4 (dismissing in similar circumstances); *Montanez v. D & D Auto, LLC*, No. 15-CV-397, 2016 WL 1254199, at *6 (D. Conn. Mar. 29, 2016) ("Because the [c]ourt finds that [the plaintiff] cannot possibly satisfy the MMWA's jurisdictional amount," including where she failed to "provide a dollar amount that represents the plausible value" of certain claims, "it must dismiss the MMWA claim."); *Donahue v. Bill Page Toyota, Inc.*, 164 F. Supp. 2d 778, 780 (E.D. Va. 2001) ("If it appears from the face of the complaint that the MMWA's $50,000 amount-in-controversy requirement for federal jurisdiction is not met, then the claim must be dismissed because no federal question jurisdiction would remain.").

Further, Plaintiff's Amended Complaint does not satisfy the jurisdictional requirement for an MMWA class action because it does not identify 100 named Plaintiffs. (*See generally* Am. Compl.) It identifies just one: Mr. Tamburri. (*Id.*) This showing is insufficient to satisfy the MMWA's jurisdictional requirements. *See, e.g.*, 7 Herbert B. Newberg & William B. Rubenstein, Newberg & Rubenstein on Class Actions § 21:7 (6th ed. 2026) (emphasizing that, in order for MMWA jurisdiction to lie in federal court, "there must be at least 100 *named plaintiffs*, not just 100 class members," a requirement that "is unique to the MMWA and peculiar"

[6] And even adding this amount to the treble damages described in footnote 4, supra, Plaintiff remains short of the $50,000 statutory threshold.

(emphasis in original, footnote omitted)). "As the sole named plaintiff in this action, [Plaintiff] is ninety-nine named plaintiffs short of subsection (3)'s requirement." *Ghaznavi v. De Longhi Am., Inc.*, No. 22-CV-1871, 2023 WL 4931610, at *7 (S.D.N.Y. Aug. 2, 2023). Accordingly, the Court does not have jurisdiction over the class action claims because there are not 100 named plaintiffs in this Action, and the Court does not have jurisdiction over Plaintiff's individual claim because he has not included sufficient allegations as to the amount in controversy for his individual claim.

2. Other Possible Paths to Subject Matter Jurisdiction

Plaintiff relies solely on federal question jurisdiction as the basis for this Court's ability to hear this Action. (Am. Compl. ¶¶ 4–6.) Nevertheless, the Court considers whether some other statute might provide a route to proceed on the allegations in the Amended Complaint, and for the reasons that follow, concludes that there is no basis in the Amended Complaint for subject matter jurisdiction.

Courts are generally divided as to whether, even if an action asserting MMWA claims fails to satisfy the MMWA's jurisdictional requirements, a federal court may nevertheless entertain the claims under another grant of jurisdiction. *See, e.g.*, *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667, 2024 WL 967124, at *10 (S.D.N.Y. Mar. 5, 2024) (describing "compelling arguments" in support of the view that the Court cannot entertain an MMWA class action unless the MMWA's class action requirements are met, but nevertheless "adher[ing] to the position" that such claims may be heard in federal court where "the [c]lass [p]laintiffs base subject-matter jurisdiction on . . . CAFA"); *Ghaznavi*, 2023 WL 4931610, at *7–9 (considering whether a complaint that "satisfies CAFA's jurisdiction requirements but not the MMWA's" could be heard in federal court, describing "courts [as] divided into two camps," collecting cases, and

concluding that "CAFA does not provide a workaround to the MMWA's federal jurisdictional requirements"); *Montanez*, 2016 WL 1254199, at *8 ("Most district courts in [the Second] Circuit have determined that federal courts cannot exercise supplemental jurisdiction over MMWA claims, unless the amount in controversy requirements the Act provides are satisfied."); Newberg & Rubenstein on Class Actions § 21:7 ("There is a split in the circuits about CAFA's relationship to the MMWA."). While that debate is a fascinating one, it has no bearing here, because Plaintiff's allegations do not satisfy any other route to federal jurisdiction that the Court can discern. For instance, crediting the allegations in the Amended Complaint, there would be no jurisdiction under the Class Action Fairness Act—a commonly attempted workaround when a plaintiff fails to allege jurisdictional facts for the purposes of the MMWA—because Plaintiff has not alleged that there exists a class with "more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Palladino v. JP Morgan Chase & Co.*, No. 23-CV-1215, 2023 WL 4034358, at *3 (E.D.N.Y. June 15, 2023) (quotation marks omitted). Although Plaintiff alleges that he "believes that there are thousands of members of the Class," (Am. Compl. ¶ 19), assuming that this constitutes an allegation that there are more than 100 members (and not simply an allegation as to Plaintiff's own belief), Plaintiff has not actually alleged his own or any class member's citizenship such that the Court can discern whether there exists minimal diversity under CAFA, because he has alleged only that he has New York *residency*, (*see generally* Am. Compl. ¶ 2). *Suero v. NFL*, No. 22-CV-31, 2022 WL 17985657, at *7 (S.D.N.Y. Dec. 16, 2022) (dismissing complaint for want of CAFA jurisdiction where the "plaintiffs have failed to establish even minimal diversity, because they do not allege facts sufficient to determine the citizenship of all defendants") (report and recommendation); *cf. Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (concluding

that allegations sufficed where, although "the named plaintiff [alleged only that he] was a *resident* of New York" and "made no declaration as to his citizenship . . . the complaint also stated that there were 'thousands' of 'New York customers' who were members of the class").

Similarly, "[p]laintiffs asserting jurisdiction under CAFA," even on a Motion to Dismiss, "'must show that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million.'" *Cruz v. T.D. Bank, N.A.*, No. 10-CV-8026, 2014 WL 1569491, at *10 (S.D.N.Y. Apr. 17, 2014) (quoting *Blockbuster*, 472 F.3d at 58). Where the allegations do not establish $5,000,000 in controversy, it is appropriate to dismiss the claims with leave to amend. *Id.* (dismissing with leave to amend where allegations did not establish $5,000,000 in controversy); *see also Santos v. Lidl US, LLC*, No. 24-CV-611, 2025 WL 2614944, *4 (E.D.N.Y. Sept. 10, 2025) (dismissing complaint where the plaintiff's complaint was "devoid of any alleged amount in controversy," failed to "plead CAFA jurisdiction as a basis for th[e] [c]ourt's jurisdiction in the [c]omplaint," and failed to "allege facts in the Complaint that could establish a basis for CAFA jurisdiction"), *reconsideration denied*, 2025 WL 2917329 (E.D.N.Y. Oct. 14, 2025). As already described, Plaintiff does not allege "facts that would support" damages exceeding CAFA's jurisdictional threshold. *Suero*, 2022 WL 17985657, at *8 (dismissing claim assertedly brought under CAFA where the plaintiffs simply "allege[d] in general terms that the dispute 'involves monetary damages in excess of $5,000,000,'" more than is alleged here); *Ballard v. U.S. Bank N.A.*, No. 20-CV-5129, 2020 WL 6381134, at *7 (S.D.N.Y. Oct. 29, 2020) (substantially same). Accordingly, even assuming that CAFA permits a federal court jurisdiction to hear MMWA claims, it is not satisfied here.

For similar reasons, the Court cannot conclude that there exists diversity jurisdiction over the MMWA claim asserted by Plaintiff (assuming, without deciding, that a claim that does not

satisfy the MMWA's jurisdictional provision could proceed under the grant of jurisdiction in 28 U.S.C. § 1332), or any of the other claims he asserts, because Plaintiff has not alleged his citizenship as required to support diversity jurisdiction, and because Plaintiff's allegations do not satisfy the amount in controversy requirement. (*See* Am. Compl.) Allegations of residency, like those made in Plaintiff's Amended Complaint, are insufficient. *Innovative Inflatables, LLC v. Ally Bank*, 602 F. Supp. 3d 315, 317 (D. Conn. 2022) ("What the statute requires is diversity of *citizenship*." (emphasis in original)); *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 99–100 (E.D.N.Y. 2019) ("It is 'well-established that allegations of residency alone cannot establish citizenship.'" (quoting *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)). Accordingly, diversity jurisdiction cannot permit the Court to consider the non-federal claims asserted along with the MMWA claim. *See Washington v. Ortiz*, No. 23-CV-9647, 2023 WL 8188591, at *3 (S.D.N.Y. Nov. 27, 2023) ("Because [the p]laintiff does not allege facts suggesting that any claims she may be able to plead plausibly would satisfy the $75,000.00 amount in controversy or that diversity of citizenship is complete, the [c]ourt does not have diversity jurisdiction of this matter.").

For the reasons set forth above, based on the allegations in the Amended Complaint, there is no basis for this Court's subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts . . . possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (citations omitted)). Nevertheless, the issues identified herein may be capable of redress via the filing of a Second Amended Complaint. Particularly as the jurisdictional deficiency identified here was not raised by either Party, the Court will permit Plaintiff another opportunity to file an amended pleading. *See generally Lewis v. S&S Nutrition Inc.*, No. 21-CV-00957, 2023 WL 2837682, at *2 (D.

Conn. Apr. 7, 2023) (proceeding by initially providing the plaintiff an opportunity to cure a jurisdictional deficiency by filing an amended complaint).

## III. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Plaintiff's Second Amended Complaint, if he wishes to file one, shall be filed by no later than 30 days from the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is further advised that the Second Amended Complaint will replace, not supplement, the Amended Complaint. *See, e.g.*, *Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *22 (S.D.N.Y. Mar. 30, 2026) (so-directing the filing of an amended complaint). The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice. *Id.* The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 26.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge